**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No:17-cv-00919-STV

GRACE S. HUITT

    Petitioner

v.

WILBANKS SECURITIES, INC.

    Respondent.

---

**PETITIONER'S OPPOSITION FOR AN ADDITIONAL EXTENSION OF TIME FOR RESPONDENT TO SUPPLEMENT ITS MOTION TO VACATE**

---

Petitioner, Grace S. Huitt (the, "Petitioner") by and through her undersigned attorneys hereby submits her opposition to Respondent's motion for an extension of time and states as follows:

**BACKGROUND**

1. This is an action to confirm an arbitration award entered in connection with a customer arbitration that was conducted before the Financial Industry Regulatory Authority, Inc. ("FINRA") and to enter judgment in conformity therewith. The underlying arbitration resulted in FINRA entering an award of $1,073,440 in favor of Petitioner on April 13, 2017. The award included $536,720 in punitive damages pursuant to 23 OK Stat. § 23-9.1 (2016), a rare occurrence in FINRA arbitrations.

2. This case was filed on April 14, 2017. Respondent was previously provided two extensions by the Court. In addition, Respondent already replaced one attorney and, now, its second attorney seeks the Court's permission to withdraw.

3. The first extension, which was consented to by the Petitioner, was granted on April, 21, 2017. This extension granted the Respondent until June 5, 2017 to supplement its already filed motion to vacate. The purpose of the April, 21 2017 extension was to allow the Respondent additional time to secure new counsel and transcribe the arbitration record.

4. On June, 2, 2017, David Lisser entered an appearance for the Respondent, replacing its first attorney, John Gibson. Mr. Lisser also made a motion for an additional forty-five days extension.

5. In support of its June 2, 2017 motion for an extension, Aaron Wilbanks, the CEO of Respondent submitted a declaration stating that he "interviewed approximately fifteen securities attorneys in Oklahoma City and Denver to replace our prior counsel, John Gibson. None of those attorneys were available to take on the representation."

6. According to its June 2, 2017 application, Mr. Lisser, the only "available" attorney to represent the Respondent in this action, was retained on May 17, 2017 and needed additional time to review and transcribe the underlying arbitration record, which Mr. Lisser represented to the Court was not received until June 1, 2017.

7. In opposition to Respondent's motion to adjourn, the Petitioner submitted evidence to the Court to demonstrate that the arbitration record, in fact, was received by the Respondent on April 17, 2017. This evidence was the transmittal letter from FINRA to Respondent, which enclosed DVDs of the arbitration.

8. Notwithstanding the foregoing, the Court granted the Respondent's request for an additional forty-five-day extension.

9. On July 20, 2017, the Respondent filed its cross-motion to vacate, which supplemented and replaced the initial pleading made by its first attorney, John Gibson.

10.     The Petitioner filed opposition to the cross-motion on August 2, 2017.

11.     On August 14, 2017, Respondent's new counsel, David Lisser filed a motion to withdraw as counsel citing C.R.P.C. 1.16(a)(1), which prohibits an attorney from representing a client if, "the representation will result in violation of the Rules of Professional Conduct or other law."

12.     Mr. Lisser's application also cites C.R.P.C. 1.16(b)(4), which contemplates permissive withdrawal if, "the client insists upon taking action that the lawyer considers repugnant or with which the lawyer has a fundamental disagreement."

13.     Finally, and in addition to filing a motion to withdraw, Respondent requested an additional thirty-day enlargement of time to file a reply in support of its cross-motion to vacate.

14.     The Court set a hearing for this matter for August 21, 2017.

## BASIS FOR OBJECTION

15.     Ironically, Respondent's cross-motion cites, among other frivolous grounds, the arbitration panel's refusal to grant the Respondent additional postponements of the arbitration hearing as a basis for this Court to vacate the arbitration award. Respondent also relies on a number of cases that were overruled by a seminal United States Supreme Court opinion dealing with issues of timeliness in FINRA arbitrations.

16.     Respondent's motion to vacate is more than frivolous. It is fraudulent and was filed merely as a means to afford it time to transfer its assets.

17.     The Respondent is currently suspended from operating by FINRA and nearly all of its brokers, including its chief compliance officer and vice president have registered with other firms.[1]  Its CEO, Aaron Wilbanks, is no longer registered.

---

[1] Respondent's operations were previously restricted by FINRA as a result of the arbitration award, but its membership status was still active until August 4, 2017.

18. On August 4, 2017, FINRA officially suspended Respondent for failure to file its quarterly FOCUS report with the Securities and Exchange Commission. A FOCUS report is a certified report of the firm's financial status and includes, among other things, a list of the firm's assets and liabilities.

19. It is the undersigns' belief that Respondent is taking actions to fraudulently transfer its assets to avoid paying the arbitration award. It is also my belief that the Respondent is using its attorneys and the Court to further this scheme.

20. The Petitioner has already notified the Court that no less than fifteen attorneys in two different states have declined to represent it. Now, its current attorney seeks withdrawal ostensibly because the Respondent wishes to do or file something nefarious.

21. The underlying arbitration involved similar underhanded litigation tactics by the Respondent, which included, among other things, making false statements to secure adjournments and filing frivolous motions, which included a motion seeking to disqualify the entire panel due to unspecified bias one week before the arbitration was set to commence.

22. Respondent's conduct went even further.

23. Prior to the start of the arbitration, my law office began receiving death threats. The treats, referenced the upcoming arbitration and were traced to a public library in Oklahoma City, where the Respondent is based. These treats were reported to law enforcement and FINRA provided armed security at the arbitration, a practice which is not customary.

24. If this matter is delayed any further, I am fearful that the Respondent will be successful in fraudulently transferring its assets, requiring the Petitioner to initiate a new action to recover those funds against individuals who have already demonstrated that they have little respect for the law.

**WHEREFORE**, Petitioner respectfully requests that the Court deem the motion and cross-motion fully briefed and render a decision on the pleadings already submitted by the parties.

**WHEREFORE**, Petitioner also respectfully requests that the Court, as it has done in the past for this matter, conduct the August 23, 2017 hearing telephonically as counsel is based in New York City.

Respectfully submitted,

*s/ Marc Fitapelli*
Fitapelli Kurta
28 Liberty Street, 30th Floor
New York, New York 10005
Telephone: 212-658-1501
Fax: 855-348-2735
Email: mfitapelli@fkesq.com
Attorneys for Petitioner