IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-00919-STV

GRACE S. HUITT,

    Plaintiff,

v.

WILBANKS SECURITIES, INC.,

    Defendant.
_____

**ORDER**
_____

Magistrate Judge Scott T. Varholak

    This matter comes before the Court on Plaintiff's Petition to Confirm Arbitration Award (the "Petition"), filed April 14, 2017 [#1], and Defendant's Opposition to Petition to Confirm Arbitration Award and Cross-Motion to Vacate Arbitration Award (the "Cross-Motion"), filed July 20, 2017 [#23].  The Petition and Cross-Motion are before the Court on the Parties' consent to have a United States magistrate judge conduct all proceedings in this action and to order the entry of a final judgment.  [#13, 14]  This Court has carefully considered the Petition and Cross-Motion and related briefing, the entire case file, and the applicable case law, and has determined that oral argument would not materially assist in the disposition of the Petition and Cross-Motion.  For the following reasons, I **GRANT** the Petition to the extent it seeks confirmation of the arbitration award and **DENY** the Cross-Motion.

I.  **BACKGROUND**

On September 23, 2008, Plaintiff purchased an ING Landmark Variable Annuity (the "Annuity") through Defendant's then-registered representative, John Stevens. [#23 at 3, #26-3 at 2-3] According to Plaintiff, Mr. Stevens promised a seven percent annual growth guarantee on the Annuity for at least the first four years of the contract, after which there would be no surrender fees. [#26-3 at 3] The New Account Form signed by Plaintiff and Mr. Stevens (on behalf of Defendant) contained an arbitration provision pursuant to which "[a]ll parties to [the] agreement [gave] up the right to sue each other in court, including the right to a trial by jury, except as provided by the rules of the arbitration forum in which a claim is filed." [#1-1] The arbitration provision contained a number of agreed upon guidelines for the arbitration, including that "[t]he arbitrators do not have to explain the reason(s) for their award." [*Id.*]

In addition to the arbitration provision, the New Account Form also included a separate provision entitled "Governing Law." [*Id.*] This section of the agreement stated that the "agreement shall be governed by the laws of the State of Oklahoma, exclusive of that state's choice-of-law provisions." [*Id.*] The Governing Law section also included a sentence stating that "[t]he provisions of this Agreement shall be continuous and cover individually and collectively all accounts which the undersigned may open or reopen with you and shall inure to the benefit of yourselves, your successors and assigns and shall be binding upon the undersigned and/or the estate, executors, administrators and assigns of the undersigned." [*Id.*]

According to Plaintiff, at some point in 2012, she received $2,158,536.18 from the Annuity, which was $594,135.44 less than what was promised by Mr. Stevens.

[#26-3 at 3] On January 22, 2016, Plaintiff initiated arbitration against Defendant by filing a Statement of Claim (the "Claim"). [#23 at 3] The arbitration was conducted before a Financial Industry Regulation Authority ("FINRA") panel of three arbitrators (the "Panel"). [*Id.*]

During the course of the arbitration, Defendant filed a motion to dismiss arguing that Plaintiff's claims were barred by FINRA's six-year statute of limitations. [#26-1] Although Defendant represents in its Cross-Motion that the motion to dismiss argued "that Plaintiff's claims were time-barred under the relevant state statutes of limitations, and that the Panel lacked jurisdiction to hear the claims under FINRA Rule 12206" [#23 at 3-4], the motion to dismiss does not reference state statutes of limitations but instead relies exclusively upon FINRA Rule 12206. [#26-1 at 7] Plaintiff responded to the motion to dismiss advancing several arguments against dismissal, including the fact that the motion to dismiss was filed after the deadline established by FINRA's Code of Arbitration Procedure. [#26-3]

The Panel initially scheduled an evidentiary hearing for December 13-15, 2016. [#23 at 4] On December 3, 2016, Defendant's counsel, John Gibson, swore an affidavit saying that he had been experiencing a condition known as Spinal Stenosis and that he had been scheduled for emergency surgery on December 6, 2016. [#8-2, ¶¶ 5, 7] Mr. Gibson's affidavit stated that, in the best case scenario, he could "return to light work as early as January and may be able to travel towards the end of February or March." [*Id.* at ¶ 11] On December 15, 2016, the Panel continued the evidentiary hearing and rescheduled it for March 14-17, 2017, in Salt Lake City, Utah. [#8-3 at 2; #23 at 4]

Mr. Gibson underwent heart surgery on December 19, 2016, and underwent spinal surgery on December 26, 2016. [#23 at 4] A January 12, 2017 letter from Mr. Gibson's doctor stated that Mr. Gibson was "making appropriate progress and [was] recovering as expected." [#8-2 at 1] The letter further stated as follows:

> It has come to my attention that Mr. Gibson had professional obligations that were scheduled during this time. Again, it should be stressed the patient had profound spinal cord compression causing myelopathy and was at very high risk for permanent spinal cord injury that could have resulted in permanent paraplegia. Under my direction, he was informed to cease performing his typical professional duties until we were able to properly decompress and stabilize his cervical spine.

[*Id.*] The January 12 letter made no mention of future professional or travel restrictions. [*Id.*]

In early March, approximately one week before the rescheduled evidentiary hearing, Mr. Gibson withdrew as counsel. [#23 at 4-5; #25 at 9-10] According to Defendant, Mr. Gibson withdrew because he was "[m]edically unfit to travel out of Oklahoma." [#23 at 4] Following Mr. Gibson's withdrawal, Defendant submitted several motions requesting a postponement of the evidentiary hearing or a change of venue to Oklahoma City. [#23 at 5; #25 at 9-10; #8-8; #8-11] In support thereof, Defendant attached both Mr. Gibson's December 3 affidavit and the January 12 doctor's letter. [#8-8 at 3; #25 at 10; #36 at 16] Defendant also claims that, on January 26, 2017, Mr. Gibson testified in "Beres v. Wilbanks Securities, Inc., the sister arbitration companion case" about his health condition.[1] [#36 at 17] The Panel denied Defendant's request for a continuance or transfer of the proceedings to Oklahoma City. [#23 at 5; # 25 at 10]

---

[1] Although Defendant contends that Mr. Gibson "has provided a sworn declaration as to what testimony was provided to the Beres panel" [#36 at 17], the only declaration from Mr. Gibson attached to Docket Number 8—the citation provided by Defendant—is the

4

The final evidentiary hearing was held between March 14 and March 16, 2017. [*Id.*] On April 13, 2017, the Panel issued its decision. [#1-2] The Panel found that Defendant's conduct "which is the subject of the arbitration continued from 2008 to within six years of the date of [Plaintiff's] filing of the Statement of Claim," and therefore denied Defendant's motion to dismiss. [*Id.* at 3] The Panel awarded Plaintiff compensatory damages of $536,720 and punitive damages of $536,720 (collectively, the "Award"). [*Id.*] The decision does not give a written explanation for the punitive damages portion of the Award. [*Id.*]

On April 14, 2017, Plaintiff filed her Petition in this Court. [#1] On April 20, 2017, Defendant filed an Emergency Motion to Stay Arbitration Award and Motion to Vacate Arbitration Award (the "Emergency Motion"). [#8] On April 21, 2017, this Court held a hearing on the Emergency Motion and declined to make a ruling on the Emergency Motion but granted Defendant leave to file supplementation. [#12] On July 20, 2017, Defendant filed the Cross-Motion [#23], which mooted the Emergency Motion [#24]. On August 2, 2017, Plaintiff responded to the Cross-Motion [#25], and Defendant replied on September 15, 2017 [#36].

---

December 3, 2016 affidavit. [#8-2; #8-4] A review of the docket for *Beres v. Wilbanks Securities, Inc.*, No. 17-cv-1024-KLM (D. Colo. 2017), reveals that the arbitration panel in Beres directed Mr. Gibson to participate in a January 24, 2017 telephonic pre-hearing conference "in order that the Panel can be updated on his medical condition in connection with scheduling any pre-hearing conference or evidentiary hearing." *Beres*, Dkt. No. 16-2, filed June 23, 2017. Defendant contends that "the Chief Panelist served on both the Huitt and Beres panel[s]." [#36 at 17] Although a Declaration from Mr. Gibson, dated June 9, 2017, was filed in *Beres*, the Declaration does not describe the information he provided to the Beres arbitration panel regarding his health. *Beres*, Dkt. No. 13-1, filed June 9, 2017. With regard to the January 24, 2017 pre-hearing conference, the Declaration merely states: "I was ordered by the arbitration panel to participate in a telephonic conference call on January 24, 2017. I did so despite being on heavy mediation." *Id.* at ¶ 7.

5

## II. LEGAL STANDARD

Courts must "exercise caution in setting aside arbitration awards because one purpose behind arbitration agreements is to avoid the expense and delay of court proceedings." *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001) (quotation omitted). As a result, "[t]he standard of review of arbitral awards is among the narrowest in the law." *Richardson v. Citigroup, Inc.*, No. 12-cv-0485-WJM-KMT, 2014 WL 3892967, at *1 (D. Colo. Aug. 8, 2014) (citing *Litvak Packing Co. v. United Food & Commercial Workers, Local Union No. 7*, 886 F.2d 275, 276 (10th Cir. 1989)). Indeed, "[o]nce an arbitration award is entered, the finality of arbitration weighs heavily in its favor and cannot be upset except under exceptional circumstances." *Ormsbee Dev. Co. v. Grace*, 668 F.2d 1140, 1146-47 (10th Cir. 1982). Accordingly, a party attacking the legality of an arbitration award has the "heavy burden" of sustaining the attack. *Amicorp Inc. v. Gen. Steel Domestic Sales, LLC*, No. 07-cv-01105-LTB-BNB, 2007 WL 2890089, at *2, 5 (D. Colo. Sept. 27, 2007).

## III. ANALYSIS

Defendant's Cross-Motion advances three arguments for vacating the Award. [#23] Defendant's Reply advances a fourth argument. [#36 at 1-7] The Court addresses each below.

### A. The Panel's refusal to grant a second continuance

The Federal Arbitration Act ("FAA") authorizes a district court to vacate an award "where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown." 9 U.S.C. § 10(a)(3). Nonetheless, "[b]ecause the primary purpose for the federal policy of favoring arbitration is to promote the

expeditious resolution of disputes, a court's review of the arbitrator's decision to postpone or not postpone the hearing is quite limited." *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1464 (10th Cir. 1995). Indeed, courts have held that "[a]n arbitrator's refusal to grant a postponement is not grounds to vacate an arbitration award if there is any reasonable basis for the arbitrator's considered decision not to grant a postponement." *Healthcare Workers' Union Local 250 v. Am. Med. Response*, No. CV F 05-1333 AWI DLB, 2006 WL 2949262, at *1 (E.D. Cal. Oct. 16, 2006); *see also Fairfield & Co. v. Richmond F. & P. R.R. Co.*, 516 F. Supp. 1305, 1313–14 (D.D.C.1981) ("[A]ssuming there exists a reasonable basis for the arbitrators' considered decision not to grant a postponement, the Court will be reluctant to interfere with the award on these grounds."), *cited with approval in ARW Expl. Corp.*, 45 F.3d at 1464.

Here, the Court finds ample reasons to support the Panel's decision not to continue the hearing for a second time, and therefore finds that the Panel was not guilty of misconduct in refusing to postpone the March evidentiary hearing. As detailed above, the Panel initially scheduled an evidentiary hearing for December 13-15, 2016. [#23 at 4] Based upon Mr. Gibson's sudden medical condition, the Panel agreed to continue the hearing until March 14-17, 2017. [#8-3 at 2] This continuance gave Defendant three months to obtain new counsel and have new counsel prepare for the hearing.

Instead, Defendant did not obtain new counsel. Defendant contends that it "had hoped that its attorney would heal and be able to attend the hearings." [#36 at 18] But, according to pleadings filed in the underlying arbitration, Defendant had doubts that this would occur. For example, in Defendant's March 2, 2017 motion to continue the

7

evidentiary hearing, Defendant represented that it told the Panel in December 2016 that Mr. Gibson would need "three months to heal plus at least some very thin margin of time for error." [#8-8 at 4] Moreover, Defendant asserts in its Reply that counsel knew in January 2017 "that he could not travel and would be heavily medicated until March at which time he would be weaned from the medication." [#36 at 18 (quotation omitted)]

Yet, Defendant failed to take any precautions in the event that its counsel would not be ready for the hearings. There is no indication that Defendant sought to obtain new counsel who could participate in the hearing. Nor did Defendant promptly move to continue the hearing upon learning in January 2017 that Mr. Gibson would remain heavily medicated through March. Instead, Defendant waited until less than two weeks before the hearing to move to continue the hearing [#8-8; #8-11], and Mr. Gibson waited until six days before the hearing to withdraw as counsel [#23 at 4-5]. The Panel could have reasonably concluded that Defendant's failure to obtain new counsel during the three month continuance period justified the denial of any further continuances.[2] *See Martik Bros., Inc. v. Kiebler Slippery Rock, LLC*, No. 08cv1756, 2009 WL 1065893, at *3 (W.D. Pa. Apr. 20, 2009) (finding no abuse of discretion where arbitration panel denied continuance request based upon notification of counsel's withdrawal the day before the hearing was to commence); *Painewebber, Inc. v. Barca*, Nos. C 00-00544 CRB, C 00-

---

[2] As explained above, Defendant has the "heavy burden" of demonstrating that the arbitration award should be vacated. *Amicorp Inc. 200*7 WL 2890089, at *4. Defendant, however, has not provided the Court with the Panel's rationale for denying the continuance or indicated that the Panel failed to give a rationale for its decision to deny the continuance. Although the Panel was not required to articulate its reasons for the decision, the lack of information concerning the basis for the Panel's decision makes it even harder for this Court to find that the Panel abused its discretion. *See El Dorado Sch. Dist. No. 15 v. Cont'l Cas. Co.*, 247 F.3d 843, 848 (8th Cir. 2001) (holding that arbitrator's failure to specify reasons for the denial of a continuance did not evidence misconduct).

00898 CRB, 2000 WL 1071836, at *3 (N.D. Cal. July 28, 2000) (refusing to vacate arbitral decision where arbitration panel denied continuance for defendants to obtain counsel when defendants received notice of the hearing two months earlier yet neglected to hire an attorney, prepare for the hearing, or request a continuance until a week before the hearing).

Moreover, the affidavit and doctor's letter submitted in support of the continuance supported only a continuance of the December hearing, not the March hearing.[3]  [#8-2] Mr. Gibson's affidavit stated that he may be able to "return to light work as early as January and may be able to travel towards the end of February or March." [*Id.* at ¶ 11] The doctor's letter stated that Mr. Gibson was "making appropriate progress and [was] recovering as expected." [#8-2 at 1]  While that letter explained that Mr. Gibson could not perform his professional duties during the time period of his surgeries, it makes no mention of continued restrictions.  [*Id.*]  Thus, the Panel could have reasonably concluded that Defendant failed to offer sufficient support for its requested continuance. *See ARW Expl. Corp.*, 45 F.3d at 1464 (finding arbitrator "well within his discretion" in denying continuance where defendants failed to show sufficient cause for the continuance).  Accordingly, because there are multiple reasons why the Panel could have rejected Defendant's continuance requests, the Court finds that the Panel did not engage in misconduct when it refused to continue the March hearing.

---

[3] Again, it is not clear from the record what Mr. Gibson told the Beres Panel about his health status at the January 24 conference.  Moreover, that conference occurred nearly two months before the evidentiary hearing and it does not appear that Defendant made any effort during that time period to secure new counsel.

## B. The Panel's conclusion that the conduct occurred within six years of the filing of the Claim and that the Claim was therefore timely under FINRA Rule 12206

Defendant next argues that the Panel exceeded its powers by hearing and ruling on claims that were beyond the Panel's jurisdiction under FINRA rules. [#23 at 7-9] FINRA Rule 12206(a) provides that "[n]o claim shall be eligible for submission to arbitration under the Code where six years have elapsed from the occurrence or event giving rise to the claim." Defendant contends that because Plaintiff purchased the Annuity on September 23, 2008, she needed to bring her action by September 22, 2014. [#23 at 8] According to Defendant, Plaintiff's failure to do so left the Panel without jurisdiction to hear Plaintiff's claims. [*Id.*] Specifically, Defendant maintains that "[t]he Tenth Circuit has held that because [Rule 12206(a)] 'defines the arbitrators' substantive jurisdiction . . . the courts, not the arbitrators themselves, must decide whether a claim is time-barred under [Rule 12206].'" [#23 at 8 (quoting *Cogswell v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 78 F.3d 474, 481 (10th Cir. 1996))]

*Cogswell*, however, was decided six years before *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002). In *Howsam*, the Supreme Court reasoned that "the NASD arbitrators, comparatively more expert about the meaning of their own rule, are comparatively better able to interpret and to apply it."[4] 537 U.S. at 85. As a result, the Court found "that the applicability of the NASD time limit rule is a matter presumptively for the arbitrator, not for the judge." *Id.* Thus, because it was for the Panel and not this Court to decide whether Plaintiff's claims fell within Rule 12206(a)'s six-year timeframe, the Court rejects Defendant's invitation to second-guess the Panel's interpretation of

---

[4] NASD stands for the National Association of Securities Dealers. *See McCune v. SEC*, 672 Fed. App'x 865, 866 (10th Cir. 2016). FINRA succeeded NASD in 2007. *See id.*

FINRA Rule 12206(a).[5]  *See Mid-Ohio Sec. Corp. v. Estate of Burns*, 790 F. Supp.2d 1263, 1271-72 (D. Nev. 2011) ("Because Rule 12206 is not a strict rule of eligibility, but a question for the arbitrators more akin to a statute of limitations, the arbitrators were free to interpret the rule as they saw fit, including adding in tolling provisions or a discovery rule.").

### C. The Panel's failure to conclude that claims were time-barred under state law

Next, Defendant argues that Plaintiff's claims were barred by state statutes of limitations.[6]  Defendant argues that "the Panel acted in manifest disregard of the law by hearing, and ruling on, claims which were barred by state law under the relevant statutes of limitations."  [#23 at 9]  As a result, Defendant argues this Court should vacate the Award.  [*Id.*]

As an initial matter, it is not clear that the Court may overturn an arbitration award based upon a "manifest disregard of the law."  In *Hall Street Associates, L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 584 (2008), the Supreme Court held that Sections 10 and 11 of the FAA provide the "exclusive grounds for expedited vacatur and modification" of an arbitration award.  Since *Hall Street*, the circuits have split on the issue of whether manifest disregard remains a viable standard because an arbitrator who manifestly disregards the law exceeds his powers under 9 U.S.C. § 10(a)(4).  *See Abbott v. Law*

---

[5] Defendant's Reply fails to even address *Howsam*, and only makes passing reference to Rule 12206(a)'s six-year timeframe.  [#36 at 13]  Instead, the Reply focuses on the application of Oklahoma's statute of limitations.  [#36 at 6-16] The Court addresses that argument below.

[6] In the Cross-Motion, Defendant argues that the claims are barred by both Oklahoma law (the state referenced by the choice-of-law provision) and Colorado law (the state where Plaintiff resided and the contract was entered into).  [#23 at 9-15]  In its Reply, however, Defendant argues that Oklahoma law should apply.  [#36 at 6-16]

11

*Office of Patrick J. Mulligan*, 440 Fed. App'x 612, 618 (10th Cir. 2011). The Tenth Circuit has declined to decide the issue. *See id.* at 620; *see also THI of N. M. at Vida Encantada, LLC v. Lovato*, 864 F.3d 1080, 1085 n.1 (10th Cir. 2017) (addressing the manifest disregard exception, but noting that the "exception's viability has been uncertain [] since the Supreme Court's decision in *Hall Street*"). Because the determination of the viability of the manifest disregard exception is ultimately non-consequential to the disposition of this case, the Court will assume without deciding that the exception remains viable. *See Hosier v. Citigroup Glob. Mkts., Inc.*, 835 F. Supp.2d 1098, 1102 (D. Colo. 2011).

"Manifest disregard of the law clearly means more than error or misunderstanding with respect to the law." *ARW Expl. Corp.*, 45 F.3d at 1463 (internal quotation omitted). Rather, manifest disregard requires a party to establish that the arbitrator acted with "willful inattentiveness to the governing law." *Hollern v. Wachovia Sec., Inc.*, 458 F.3d 1169, 1176 (10th Cir. 2006) (quotation omitted). In other words, "the record must show the arbitrators knew the law and explicitly disregarded it." *Id.* (quotation omitted).

Here, Defendant has made no such showing. As an initial matter, the Court notes that, although Defendant argued that Plaintiff's claims were barred by the Oklahoma statutes of limitations in his Pre-Hearing Brief [#8-14], Defendant's motion to dismiss considered by the Panel focused exclusively on FINRA Rule 12206(a) and did not mention either the Oklahoma or the Colorado statues of limitations [#26-1; #26-3]. It thus is not clear that the issue was properly raised and briefed before the Panel.

12

Regardless, even if this issue were raised before the Panel, and even if the Panel erroneously applied the applicable statutes of limitations, the Court would still not vacate the Award based upon a manifest disregard of the law. The Tenth Circuit has held that an incorrect application of a state's statute of limitations does not rise to the level of manifest disregard of the law. *ARW Expl. Corp.*, 45 F.3d at 1463. Rather, such mistakes are merely "erroneous interpretations or applications of law [that] will not be disturbed." *Id.*; *see also Barton v. Horowitz*, No. Civ. A. 97 N 1980, 2000 WL 35346163, at *8 (D. Colo. Mar. 6, 2000) (holding that "[e]ven assuming [ ] the Arbitration Panel was wrong in concluding that the statute of limitations, whether it be Colorado or California's, did not bar Horowitz's claims, its conclusion cannot be characterized as willful inattentiveness to governing law" (quotations omitted)). Accordingly, the Court will not vacate the Award based upon any alleged error in applying the applicable state statutes of limitations, whether they be Oklahoma's or Colorado's.

**D. The Panel's explanation for the punitive damages portion of the Award**

In its Reply, Defendant argues for the first time that the Award should be vacated because the "award did not contain a showing as to how the evidence justifies the award, findings of fact or conclusions of law." [#36 at 4] Defendant contends that this violates 12 Okla. Stat. 1872 (A) & (E) ("Section 1872").[7] By failing to raise this argument in its Cross-Motion, however, Defendant has waived this argument. *See*

---

[7] Section 1872(A) provides that an arbitrator may award punitive damages "if such an award is authorized by law in a civil action involving the same claim and the evidence produced at the hearing justifies the award under the legal standards otherwise applicable to the claim." Section 1872(E) requires an arbitrator awarding punitive damages to "specify in the award the basis in fact justifying and the basis in law authorizing the award and state separately the amount of the punitive damages or other exemplary relief."

13

*White v. Chafin*, 862 F.3d 1065, 1067 (10th Cir. 2017) (finding argument waived when raised for first time in reply brief); *Koskinas v. Colvin*, 1:16-cv-01801-CBS, 2017 WL 2908261, at *4 n.3 (D. Colo. July 7, 2017) (refusing to consider arguments raised for the first time in reply brief).

Even if the Court were to consider this argument, it does not provide sufficient grounds for the Court to vacate the Award. The New Account Form containing the arbitration provision specifically states that "[t]he arbitrators do not have to explain the reason(s) for their award." [#1-1] The Panel could have reasonably concluded that this provision allowed the Panel to dispense with written findings of fact and conclusions of law, especially since there is no indication that Defendant raised Section 1872 with the Panel. In any event, the Panel's failure to comply with Section 1872 is a mere error of law which, as described above, is insufficient to vacate the Award. *See Mantle v. Upper Deck Co.*, 956 F. Supp. 719, 736 (N.D. Tex. 1997) ("To the extent the Tribunal failed to meet the statutory requirements for assessing exemplary damages, however, it committed a mere error of law, which is insufficient to warrant vacatur of the Award.").

### E. Fees and Costs

In the Petition, Plaintiff also asks for attorneys' fees and costs [#1 at 3], but has not cited to any statutory authority or contractual provision authorizing such a request and the Panel denied Plaintiff's request for attorney's fees in the arbitration. [#1-2 at 3] The Court therefore denies Plaintiff's request for fees and costs. *See Hypower, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 13-CV-2326-DDC-TJJ, 2015 WL

7451171, at *4 (D. Kan. Nov. 23, 2015) (finding that neither the FAA nor Kansas state law nor the contract at issue authorized an award of attorney's fees).[8]

## IV. CONCLUSION

For the foregoing reasons, this Court ORDERS as follows:

1. Plaintiff's Petition to Confirm Arbitration Award [#1] is **GRANTED** insofar as it seeks confirmation of the Arbitration Award but **DENIED** insofar as it seeks an award of attorneys' fees and costs;

2. Defendant's Opposition to Petition to Confirm Arbitration Award and Cross-Motion to Vacate Arbitration Award [#23] is **DENIED**;

3. The Arbitration Award [#1-2] is **CONFIRMED**; and

4. The Clerk shall enter judgment in favor of Plaintiff and against Defendant as set forth in the Arbitration Award.

DATED: October 19, 2017         BY THE COURT:

                                             s/Scott T. Varholak
                                            United States Magistrate Judge

---

[8] At least one Court in this district has found that "[a]n award of fees incurred in obtaining enforcement of an arbitration award is discretionary." *Amicorp Inc. v. Gen. Steel Domestic Sales, LLC*, No. CIV. 07-CV-01105-LTB, 2007 WL 2890089, at *6 (D. Colo. Sept. 27, 2007), aff'd, 284 F. App'x 527 (10th Cir. 2008). The Tenth Circuit authority relied upon for that proposition, however, limited its holding to actions "brought by a union to enforce an arbitration award." *Fabricut, Inc. v. Tulsa Gen. Drivers, Warehousemen & Helpers, Local 523*, 597 F.2d 227, 230 (10th Cir. 1979) (cited in *United Steelworkers of Am., AFL-CIO-CLC v. Ideal Cement Co., Div. of Ideal Basic Indus.*, 762 F.2d 837, 843 (10th Cir. 1985)). The *Fabricut* court, in turn, relied upon a Fourth Circuit decision finding that the court's authority to award attorney's fees to the union was derived, at least in part, from the Labor Relations Management Act. *See Local No. 149 v. Am. Brake Shoe Co.*, 298 F.2d 212, 216 (4th Cir. 1962). To the extent the Court has the discretion to award attorney's fees, the Court declines to award attorney's fees under the circumstances of this case where Defendant's Cross-Motion, although ultimately without merit, was neither clearly frivolous nor undertaken in bad faith.